# CRIMINAL COURT OF BALTIMORE CITY.

Filed January 4, 1916.

STATE OF MARYLAND

VS.

PAUL S. THOMAS.

*Lindsay C. Spencer*, Assistant State's Attorney, for the State of Maryland.

*Harold B. Scrimger* and *Irving B. Scrimger* for the traverser.

CARROLL T. BOND, J.—

On the first point: that the Act of Congress which granted permission to the city to use the reservation as a park did not cede jurisdiction to police that use under local police regulations, my conclusion is against the defendant. Whether Congress did or did not cede this is, of course, to be determined by construction of the Act itself, and not by extrinsic facts concerning the reputed intention of its framers or of executive officials in the War Department. Now, use by a large body of people, such as is intended by this Act, is, to me, conceivable only as a regulated use. To make a park of the property and maintain it as such while in use, rules to prevent damage by users would seem to be as necessary parts of the apparatus as lawn-mowers, or any other tools or equipment. The conflict of wills must be adjusted there and in that use, as well as anywhere else. And use by any considerable number of people inevitably requires rules to prevent interference by lawless or ill-behaved individuals. So permission granted to the city to turn its citizens into the park without any provision for controlling them in that use would seem to be, in practice, nothing short of a contradiction, a grant which could not be availed of. The Act itself does contain an express proviso "that the said permission shall be subject to such conditions, restrictions, rules and regulations as the Secretary of War may from time to time prescribe." But, at the outset it seems unreasonable to suppose that Congress intended by this to leave the burden of the necessary small local police regulations upon the Secretary of War. And, further than this. The Secretary has undoubtedly reserved to him a broad power to make "the permission" granted subject to any regulations which he may at any time hereafter see fit to declare; and the city would have to observe these regulations under penalty of losing the right to use the reservation. But who is to carry the necessary regulations directly to individual users of the park, compelling obedience under penalty of fine or imprisonment? The park cannot be used unless and until this is done; and Secretary of War cannot reasonably be supposed to have this thrust upon him, if, indeed, he has been given the power to pass such penal regulations at all. I think upon proper construction of the Act of Congress the Secretary of War has not been given either the duty or the authority to do more than to notify the city of any regulations which he thinks should be observed, and to require the observance of them as a condition to the continued use of the reservation as a park—the effect of which would be that the city or the Park Board must promulgate those rules as its own, and require obedience subject to individual penalties. So in the end the right to regulate the use would seem to be ceded to the city authorities.

And if it be accepted that Congress intended that, to the extent of these park regulations, the use of the reservation should be subject to the jurisdiction of the local governmental body,

it seems to me to follow that violations of those regulations were intended to be punished in the ordinary course, in the local tribunals. I do not see the reason for construing the Act to split up the control of the use in that way, limited and subordinate as that control is as a whole. So I shall hold that the case has been brought before the appropriate tribunal.

But I think the objection raised by the magistrate is well taken. He questions whether under the existing laws the city as an agency of the state has authority to accept from Congress any jurisdiction over the site even after Congress cedes it, whether the city jurisdiction can attach until approved and ratified by some legislative action.

This site was in part ceded to the federal government by the Governor and Council on February 27th, 1816, acting under and in accordance with a resolution of the Legislature (No. 65) passed on January 30, 1816. And jurisdiction of some additional lots "near Baltimore City" was relinquished by an Act passed at the session of 1837 (Chap. 279) and approved March 29, 1838. Up to that time the property had been in Baltimore county. It never was and has never since been within the limits or jurisdiction of Baltimore city. The Act of 1816, Chap. 209, which first carried the boundaries of the city so far as Whetstone Point, on which the fort has been situated, had an express provision: "excluding the land ceded to the United States on Whetstone Point for the use of a fort." And so it has been ever since: never within Baltimore city, and since 1816 and 1838 withdrawn from Baltimore county.

By Section 739C of the Baltimore City Charter the city is given power to acquire for its park system, interests, rights or privileges in "any land situate wholly or partly within the city of Baltimore, or within the counties of Baltimore, Anne Arundel and Howard." This is specific and precise, and it seems clearly to leave no room for the inclusion of any land not within the jurisdictions specified. It is easy to assume that the provision would have been enlarged so as to cover the site of the fort had the possibility of its use been foreseen. But it is not the province of a court to assume what the Legislature might have done and then to set up such an assumption as

law. The Legislature naturally did not foresee the need or desirability of giving the city authority to use and govern the fort site as a park, and it has limited the extent of the city's authority somewhat short of that. And such is the law for this Court.

For all the Court can say the Legislature may prefer for some reason that the city should not use the site under the Act of Congress.

It is for these reasons that the demurrer is overruled.